```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

UNITED STATES OF AMERICA

            -against-                    13 Cr. 259 (RWS)

                                          SENTENCING
DIANA MENDESH,                            OPINION

                Defendant.
------------------------------------------X
```



**Sweet, D.J.**

On November 7, 2016, Diana Mendesh ("Defendant" or "Mendesh") pleaded guilty to conspiracy to commit bank fraud and false use of passport. Based on the conclusions set forth below, Mendesh will be sentenced to 27 months' imprisonment followed by two (2) years' supervised release, subject to the scheduled sentencing hearing on June 13, 2017.

**Prior Proceedings**

Mendesh is named in a two-count information filed in the Southern District of New York on April 5, 2013. Count One charges that in or about August 2011 to March 2012, in the Southern District of New York and elsewhere, Mendesh and others

1

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

**The Offense Conduct**

The Court adopts the facts set forth in the PSR with respect to the offense conduct. These facts are summarized, in brief form, below.

4

The FBI uncovered a criminal scheme to defraud banks and businesses in which computer hackers used a malicious computer program to obtain access to victims' bank accounts and fraudulently transfer funds out of the victims' accounts into bank accounts opened by "money mules" or "mules" for the scheme. The money mules sometimes opened bank accounts in their own names, but often used fake passports. Once the wire transfers were received in the mule accounts, the mules withdrew the fraudulently-acquired funds and distributed them to other members of the conspiracy, keeping a portion for themselves.

Mendesh was a money mule who participated in this scheme. She is a Ukrainian national who was issued a J-1 visa to travel to the United States, and entered the United States on May 25, 2011.

On August 23, 2011, at a TD Bank located in Ocean City, Maryland, Mendesh opened an account using a copy of her J-1 visa. On September 12, 2011, $19,853 was wire transferred into her account from a victim's account at another bank. The victim did not authorize the transfer. On September 12 and 13 of 2011, a total of $1,263 was withdrawn from Mendesh's account through ATM withdrawals in Maryland. Mendesh's account was subsequently frozen.

5

On September 28, 2011, a jewelry store was contacted by a male seeking to purchase ten diamonds and identifying the pickup person as "Dianna Mendesh." The male sent a copy of a fraudulently altered Lithuanian passport, and later that day, Mendesh arrived at the store to pick up the diamonds. The store did not provide the diamonds because the funds had not yet been transferred. On October 24, 2011, $139,986.03 was transferred from the bank account of another victim to the store. The victim did not authorize this transfer.

On October 20, 2011, a wire transfer for $175,756.91 was made from the bank account of another victim to a second jewelry store located in Manhattan. The victim did not authorize the transfer. The store had been contacted by an unidentified male seeking to purchase watches. The wire transfer was made for the purchase of those watches, and the watches were picked up by Mendesh, who used a fraudulently altered Lithuanian passport.

On October 26, 2011, at a Citibank branch in Manhattan, Mendesh, purporting to be "Dianna Mendesh," opened a bank account using a Lithuanian passport with a false date of birth. On January 17, 2012, $10,350 was wire transferred into this account from another victim's account. The victim did not

6

authorize the transfer. A total of $16,442 was withdrawn from the account between October 2011 and January 2012.

On December 19, 2011, a third jewelry store, located in New Jersey, was contacted by a male seeking to purchase a watch. He agreed to send a wire transfer for the purchase and indicated that "Dianna Mindesh" would pick up the watch. On December 20, 2011, a wire transfer for $90,843 was made from an account belonging to a victim to the New Jersey jewelry store. The victim did not authorize the transfer. Mendesh later picked up the watch.

On January 10, 2012, at a TD Bank branch located in Brooklyn, Mendesh opened a bank account under the name "Dayana Mendas" using a Lithuanian passport bearing her photo with a false date of birth. Three separate United States tax refund transfers amount to were made into this account from the United States Treasury, for the benefit of individual taxpayers that were not Mendesh. Between February 8 and 23, 2012, $14,397.50 was withdrawn from the account.

On January 26, 2012, also at a TD Bank branch in Brooklyn, Mendesh opened an account using the name "Anastasia Leonteva" with a California driver's license. Nine United States tax

refund transfers were made into this account from the United States Treasury for the benefit of individual taxpayers that were not Mendesh. Between March 21 and 28, 2012, $17,514.33 was withdrawn from this account.

The banks involved - TowneBank, TD Bank, and Citibank - were all insured by the Federal Deposit Insurance Corporation at all times relevant to the instant offenses.

Mendesh was arrested on January 6, 2015. She pleaded guilty to both Counts against her and is liable for having committed bank fraud by using stolen and altered passports to cause a loss of $291,430.

**The Relevant Statutory Provisions**

For Count One of the Information, to which Mendesh pleaded guilty, the maximum term of imprisonment is 30 years and the maximum fine is $1,000,000. 18 U.S.C. §§ 1344 and 1349. The offense is a Class B Felony. 18 U.S.C. § 3559. A special assessment of $100 per count is mandatory. 18 U.S.C. § 3013(a)(2)(A). The Court may impose a term of supervised release of at most five years. 18 U.S.C. § 3583(b)(1). The defendant is not eligible for probation. 18 U.S.C. § 3561(a)(1).

8

For Count Two of the Information, to which Mendesh pleaded guilty, the maximum term of imprisonment is 10 years and the maximum fine is $250,000. 18 U.S.C. §§ 1543 and 3571(b). The offense is a Class C Felony. 18 U.S.C. § 3559. A special assessment of $100 per count is mandatory. 18 U.S.C. § 3013(a)(2)(A). The Court may impose a term of supervised release of at most three years. 18 U.S.C. § 3583(b)(2). The defendant is not eligible for probation. 18 U.S.C. § 3561(a)(3).

**The Guidelines**

The 2016 edition of the <u>United States Sentencing Commission Guidelines Manual</u>, incorporating all Guideline amendments, has been used in this case for calculation purposes. U.S.S.G. § 1B1.11.

Pursuant to U.S.S.G. § 3D1.2(d), Counts One and Two cannot be grouped.

The Guideline for 18 U.S.C. § 1349 is found in U.S.S.G. § 2X1.1. Pursuant to 2X1.1(a), the substantive offense – in this case, bank fraud, is used when determining the offense level. The Guideline for bank fraud is found in U.S.S.G. § 2B1.1.

9

Pursuant to that section, the base offense level is seven, as the statutory maximum term of imprisonment is 30 years. U.S.S.G. § 2B1.1(a)(1). Because the loss was $291,430, a 12-level enhancement is applicable. U.S.S.G. § 2B1.1(b)(1)(G). The total offense level for Count One is 19.

The Guideline for 18 U.S.C. § 1543 is found in U.S.S.G. § 2L2.2. Pursuant to 2L2.2(a), the base offense level is eight. Because Mendesh fraudulently used a foreign passport, a two-level enhancement applies. U.S.S.G. § 2L2.2(b)(3)(B). This yields an offense level of 10. However, pursuant to § 2L2.2(c)(1), the Guidelines for this Count are cross-referenced to the offense charged in Count One, and the greater offense level applies. Therefore, the total offense level for Count Two is 19.

The combined adjusted offense level is 21. U.S.S.G. § 3D1.4(a). Because Mendesh has demonstrated acceptance of responsibility for the offense and because she gave timely notice of her intention to enter a guilty plea, a two-level sentence reduction pursuant to Section 3E1.1(a) applies and a one-level reduction pursuant to Section 3E1.1(b) applies. The total combined offense level is 18.

10

Mendesh has no criminal history points; therefore, the Criminal History Category is I.

Based on the total offense level of 18 and a Criminal History Category of I, the Guideline imprisonment range is 27 to 33 months. U.S.S.G. Ch. 5, Pt. A. As Count One is a Class B felony, the Guideline range for a term of supervised release is two to five years. U.S.S.G. § 5D1.2(a)(1). The Guideline range for a term of supervised release for Count Two, which is a Class C felony, is one to three years. U.S.S.G. § 5D1.2(a)(2). Mendesh is ineligible for probation. U.S.S.G. §§ 5B1.1(b)(1) and 5B1.1(b)(3).

The fine range identified in the Guidelines is $6,000 to $60,000. U.S.S.G. §§ 5E1.2(c)(3) and 5E1.2(h)(1) (requiring application of the 2014 Guidelines for offenses committed prior to November 1, 2015). If Defendant is convicted under a statute authorizing (a) a maximum fine greater than $250,000, or (b) a fine for each day of violation, the Court may impose a fine up to the maximum authorized by statute. U.S.S.G. §§ 5E1.2(c)(4). Therefore, the applicable fine range is $6,000 to $1,000,000.

Costs of prosecution shall be imposed on Defendant as required by statute. U.S.S.G. § 5E1.5. In determining whether to

impose a fine and the amount of such a fine, the Court shall consider, among other factors, the expected costs to the Government of any term of probation, or term of imprisonment and term of supervised release imposed. U.S.S.G. § 5E1.2(d)(7); 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 24, 2016, provides a daily cost of $88, a monthly cost of $2,665, and an annual cost of $31,976 for imprisonment.

Restitution is required in the amount of $291,430. 18 U.S.C. § 3663A; U.S.S.G. § 5E1.1. As a result of committing the offenses in Counts One and Two, the Defendant shall forfeit to the United States, pursuant to 18 U.S.C. §§ 982(a)(2) and 982(a)(6), all property real and personal, involved in the offenses or traceable to such property, including a sum of money equal to $291,430.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not

12

greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), having considered the Guidelines and all of the factors set forth in § 3553(a), and having reviewed the Presentence Investigation Report, the Court will impose a sentence within the Guidelines range.

**The Sentence**

For the instant offenses, Diana Mendesh shall be sentenced to 27 months' imprisonment on Counts One and Two, to run concurrently, followed by a term of two (2) years' supervised release on each count, to run concurrently. Mendesh is to report to the nearest Probation Office within 72 hours of her release from custody.

As mandatory conditions of her supervised release, Defendant shall:

(1) Not commit another federal, state, or local crime.

(2) Not illegally possess a controlled substance.

(3) Not possess a firearm or destructive device.

(4) Cooperate in the collection of DNA as directed by the probation officer.

The standard conditions of supervision (1-13) apply with the following special conditions:

(1) The Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the Defendant is in compliance with the installment payment schedule.

(2) The Defendant shall provide the probation officer with access to any requested financial information.

(3) The Defendant will participate in an outpatient treatment program approved by the United States Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol. The Defendant shall contribute to the cost of services rendered based on the Defendant's ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance abuse treatment provider.

(4) The Defendant shall obey the directives of Immigration authorities.

(5) The Defendant is to report to the nearest Probation Office within 72 hours of release from custody.

(6) The Defendant shall be supervised by the district of residence.

It is ordered that Defendant shall pay to the United States a special assessment of $200, which shall be due immediately.

It is further ordered that the Defendant make restitution in the amount of $291,430 to the victims in this case. Restitution should be made payable to the Clerk, U.S. District Court. The restitution shall be paid in monthly installments of 15% of gross monthly income over a period of supervision to commence 30 days after the release from custody. If the Defendant is engaged in a BOP non-UNICOR work program, the Defendant shall pay $25 per quarter toward the criminal financial penalties. However, if the Defendant participates in the BOP's UNICOR program as a grade 1 through 4, the Defendant shall pay 50% of her monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. § 545.11. Any payment made that is not payment in full shall be divided proportionately among the persons named.

As the victims have not been identified at the time of the writing of this Sentencing Opinion, they will be entered at a later date.

The Defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

15

Defendant shall forfeit to the United States any and all property constituting or derived from any proceeds the Defendant obtained directly or indirectly as a result of the violations, and any and all property used or intended to be used in any manner or part to commit or facilitate the commission of the violations alleged in Counts One and Two of the Indictment, including $291,430 cash.

Because the Defendant does not have the ability to pay a fine, the fine is waived in this case.

Defendant is eligible for voluntary surrender.

It is so ordered.

**New York, NY**
**June 8 , 2017**

_____
ROBERT W. SWEET
U.S.D.J.